No. 30,006.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARTON et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STAFFORD et al., *Appellees*.

(2 P. [2d] 80.)

Opinion filed July 3, 1931.

*B. H. Asher, Roy J. McMullen* and *Clyde Allphin,* all of Great Bend, for the appellants.

*Arthur R. Gates,* county attorney, *Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal involves the legal settlement and residence of a poor and dependent family and the determination of which of two counties is responsible for the care of the dependents. Florence Sceals, her husband and five minor children were residents

of the city of St. John, in Stafford county, up to October 3, 1928, and had a legal settlement there. Upon that date they moved to and established a residence in Great Bend, Barton county. About December 7, 1928, and every month thereafter, the Sceals family were furnished aid from the public treasury of Barton county in the way of food, clothing, fuel and house rent, and this relief was furnished by the officers of Barton county until the controversy arose in June, 1929, as to the deportation of the family from that county. Then a complaint was filed before a justice of the peace of Barton county, challenging the legal settlement, charging that the Sceals did not have a legal settlement in Barton county and were not entitled to aid from that county, and praying for their removal back to Stafford county. Upon a hearing the justice ordered the removal of the defendants to Stafford county and the order was executed by the sheriff of Barton county, without the consent and over the protest of Mrs. Sceals. An appeal from that order was taken to the probate court, which upheld the order of the justice of the peace directing the removal, but upon an appeal from that decision to the district court that court ruled to the contrary, holding that the order of removal was invalid and adjudged that it be vacated. This appeal followed.

It is expressly admitted that the Sceals did establish a legal settlement and residence in Barton county and had such legal settlement and residence there until the deportation order was made, unless they were excluded from gaining such a legal residence and settlement by reason of having received relief from the public treasury of Barton county on and after December 7, 1928, which was about a week after Mr. Sceals deserted and abandoned his family.

The authorities of Barton county base their right to deport the Sceals family in part on R. S. 39-313, which provides that:

"Upon complaint of any overseer of the poor, any justice of the peace may issue his warrant, directed to and to be executed by any constable, or by any other person therein designated, to cause any poor person found in the township or city of such overseer likely to become a public charge, and having no legal settlement therein, to be sent, and charged at the expense of the county, to the place where such person belongs, if the same can be conveniently done; but if he or she cannot be so removed, such person shall be relieved by said overseers whenever such relief is needed."

The claim of the county is based in part on a proviso of R. S. 39-102:

"That if such person shall have received relief from the public treasury of any county or municipality in this state, or support wholly or in part by charity, no month during which the said person shall have received such relief or support shall be reckoned in determining the question of legal residence." (R. S. 39-102.)

It is contended that as the Sceals family had received relief from the public treasury of Barton county, they cannot be regarded as having a legal settlement in the county of Barton. We think the statute in which the quoted proviso occurs applies to questions of residence in Kansas, and not to a legal settlement of poor, dependent persons who are residents of the state. The revision of 1923 relating to the control, care and relief of insane, incompetent and dependent persons, consists of six articles. The first, and the one containing the proviso on which Barton county relies, pertains to legal residence within the state of those seeking admission to state institutions such as asylums for insane, deaf and dumb schools, school for the feeble-minded, state soldiers' home and soldiers' orphans' home. That article defines who may and who may not be regarded as residents of Kansas; that an alien cannot gain a residence until he has declared his intention to become a citizen, and providing that six months' continuous residence is necessary to gain a legal residence for the purpose of the act. Provision is also made for the transfer of inmates and other dependent persons who are residents of another state or country to the place where they have a legal residence and to cause them to be returned to the state or country from which they came to Kansas. Another provision is that the trustees of charitable institutions are authorized to enter into agreements with the authorities of other states to the end of procuring legislation for the arbitration of disputed questions arising between Kansas and other states as to the residence of insane persons, paupers and other dependents, and as to their return to the state of their legal residence. Throughout the article the legislature was manifestly dealing with the question of state residence and providing tests and means for excluding from our state institutions insane persons, paupers and dependents of other states for whose relief and care the state was not responsible. Obviously the proviso mentioned applies to the testing of whether the classes named had gained a legal residence in Kansas. When it came to the question of whether paupers and dependents had acquired a legal settlement in one county or another, and the duty and obligation of the county to relieve and

support those who had acquired a legal settlement in a county, as prescribed in article 3 of the statute, the legislature made elaborate provisions for testing the sufficiency and legality of such settlements and the consequent liability of counties for the relief of their own dependents.

In these tests as to legal settlements which operate to fasten obligations on a particular county there is no exception as there is in the provision for determining the residence of a dependent in the state, and the settlement of disputes arising between states, nor any which would relieve the county from liability where a dependent had previously received relief from the public treasury of a county. (R. S. 39-305.)

On the contrary, the language employed by the legislature defines legal settlements and makes a county liable where the dependents have acquired a legal settlement therein. It provides what shall constitute a legal settlement of a married woman dependent, of legitimate children, of illegitimate children, of male persons and unmarried females over the age of twenty-one, who had resided in the county for a fixed time, of minors whose parents have no settlement in the state, of married women whose husbands have no settlement in the state, of a minor bound as an apprentice to another, and there is the further provision that a settlement, once legally gained, shall continue until it is lost by acquiring a new one or by willful absence from the state for six months or more.

The proviso under which Barton county claims exemption from liability having no application to the matter of legal settlements as defined in article 3 of the statutes, and the parties having stipulated that the Sceals family had a legal settlement in Barton county, unless the proviso named was applicable, it follows that the district court rightly held that a settlement of the Sceals was in Barton and not in Stafford county, and therefore its judgment must be affirmed. It is so ordered.